UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____
:
**LIBERTARIAN PARTY, et al.,**  :
:
    Appellants,  :
:
v.  :  Case No. 11-7029
:
**DISTRICT OF COLUMBIA BOARD**  :
**OF ELECTIONS AND ETHICS, et al.,**  :
:
    Appellees.  :
_____  :

### APPELLANTS' OPPOSITION TO APPELLEES' MOTIONS FOR SUMMARY AFFIRMANCE

Plaintiff-Appellants Libertarian Party, Bob Barr ("Barr"), J. Bradley Jansen, Rob Kampia and Stacie Rumenap (the "Libertarians") submit this Opposition to the motions for summary affirmance filed by Defendant-Appellee District of Columbia Board of Elections and Ethics (the "Board") and Defendant-Appellees Mayor Vincent C. Gray and Attorney General Irving B. Nathan ("the Mayor") on May 12, 2011.

This appeal arises from the Libertarians' challenge to the constitutionality of the Board's refusal to tally and report the votes cast for Barr, who was the Libertarians' presidential nominee in the 2008 general election, and a declared write-in candidate under District of Columbia law. Amended Complaint ("Am.

Comp.") ¶¶ 16-17; D.C. Code § 1-1001.08(r). Pursuant to D.C. Mun. Regs., tit. 3, § 806.13 ("Section 806.13"), the Board reported the total votes cast for all write-in presidential candidates in the 2008 election, but did not report the individual total cast for each write-in candidate. Am. Comp. ¶¶ 19-23. The Libertarians claim that the Board's failure to report the total number of votes cast for Barr, together with Section 806.13 as applied to them, violated their rights under 42 U.S.C. § 1983 and the First and Fifth Amendments to the Constitution. Am. Comp. ¶¶ 25-27.

In the proceedings below, the District Court granted summary judgment to Defendant-Appellees, concluding that the Board's asserted administrative interests in regulating elections provide a rational basis for Section 806.13, and for the Board's failure to report the total number of votes cast for Barr. *See Libertarian Party v. D.C. Bd. of Elections and Ethics*, No. 09-cv-1676-BAH (March 8, 2011) (Record Document 23) ("Slip Op."). The Libertarians appeal from that Order.

## **Argument**

The District Court's decision falls far short of the stringent standards for summary disposition established by the D.C. Circuit. As this Court has stated:

> A party seeking summary disposition bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified. To summarily affirm an order of the district court, this court must conclude that no benefit will be gained from further briefing and argument of the issues presented. In addition, this court is...obligated to view the record and the inferences to be drawn therefrom in the light most favorable to [the non-

2

moving party].

*Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297-98 (D.C. Cir. 1987) (internal citations and quotations omitted). Thus, summary disposition is appropriate only where the record itself conclusively establishes that either affirmance or reversal is proper. *See*, *e.g.*, *Gray v. Poole*, 243 F.3d 572 (D.C. Cir. 2001) (summarily affirming where Court's legal conclusion "follows necessarily" from decision of the Supreme Court); *Sills v. Bureau of Prisons*, 761 F.2d 792 (D.C. Cir. 1985) (summarily reversing where district court dismissed case *sua sponte* in reliance on inapposite statutory provision); *Walker v. Washington*, 627 F.2d 541 (D.C. Cir. 1985) (summarily affirming where plaintiffs' claims were "clearly frivolous" and Court's review of agency action was "limited" under "arbitrary and capricious" standard).

Unlike the foregoing cases, the merits of the District Court's decision are by no means so clear as to justify expedited action. The District Court itself acknowledged that this case presents "a close question" – specifically, "whether Plaintiffs' speech and associational rights extend to the manner in which votes are reported." Slip Op. at 8. Where such fundamental constitutional rights are implicated, the District Court's decision resolving a concededly close question demands appellate review. As the Supreme Court has repeatedly observed:

3

> the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively…rank among our most precious freedoms.

*Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) (quoting *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968)). Appellate review is especially warranted in this case, therefore, because the District Court declined the Libertarians' request for relief. *See* Slip Op. at 23.

The District Court resolved the close question in this case by "assuming" that the Libertarians' speech and associational rights are implicated, but concluding that the Board's failure to report Barr's vote total only imposed a "slight" burden on those rights. Slip Op. at 9, 17. That conclusion, in turn, relied upon the District Court's resolution of several mixed questions of fact and law, none of which is well-settled. First, the District Court determined that the District of Columbia's "overall ballot access scheme is not especially burdensome or severe," despite undisputed evidence in the record that D.C.'s ballot access requirements are more severe than those of 43 other states. Slip Op. at 12-13. Second, the District Court concluded that the Libertarians and their voter-supporters were not "effectively disenfranchised," even though it is undisputed that the Board did not report the <u>outcome</u> of their votes – *i.e.*, who they voted for. Slip Op. at 13-16. Finally, although the Supreme Court has recognized that "every

4

voter's vote…must be correctly counted and reported," and that "states may not casually deprive a class of individuals of the vote because of some remote administrative benefit," the District Court found such precedent to be distinguishable on the facts. Slip Op. at 17 (quoting *Gray v. Sanders*, 372 U.S. 368, 380 (1963) and *Dunn v. Blumstein*, 405 U.S. 330, 351 (1973)).

Whether the District Court correctly decided the foregoing issues is hardly a matter of settled law. Nor is it clear that the District Court applied the proper standard of review in deciding them. *See Anderson*, 460 U.S. at 789 (setting forth balancing test for determining proper standard of review in ballot access cases). On the contrary, as the Libertarians will demonstrate more fully in their appeal, the District Court erred on both counts, and improperly accepted the Board's asserted administrative interests – saving time and money – as justification for its failure to report the outcome of the Libertarians' votes, and Barr's vote total, on an equal basis with all other valid votes. Slip Op. at 21.

To underscore the impropriety of summary disposition in this case, the District Court's ultimate conclusion – that the Board may decline to report Barr's vote total as long as the Libertarians' votes are "determined to have no effect on the election's outcome" – appears to be without precedent. Slip Op. at 20-21. The Libertarians are unaware of any case, and Appellees have cited none, in which a

5

court applying the *Anderson* test concluded that a state may discriminate against a class of voters on the ground that their votes are not outcome-determinative. On its face, this conclusion contradicts the above-quoted principles recognized in *Gray* and *Dunn*, which the Supreme Court has recently reiterated. *See Bush v. Gore*, 531 U.S. 98, 104 (2000) (explaining that the Equal Protection Clause applies not only to "the initial allocation of the franchise," but also to "the manner of its exercise"). The District Court's rejection of the Libertarians' Equal Protection claims on the ground that "write-in candidates or voters are not a suspect class" is therefore error, because the presence of a suspect class is not a prerequisite to heightened review under *Anderson*. *Compare* Slip Op. at 17 *with Anderson*, 460 U.S. at 786 n.6, 789.

   The District Court reassures the Libertarians that, notwithstanding the operation of Section 806.13, they are free "to win elections" in the District of Columbia. Slip Op. at 18-19. But that will be virtually impossible for them to do, as long as D.C. bars Libertarian candidates from the ballot by means of signature requirements that are among the most restrictive in the nation, Slip Op. at 12, and further declines to report the outcome of their valid write-in votes unless they receive enough "to have a determinative effect on the election." Slip Op. at 17. Few voters are likely to vote for the Libertarians' declared write-in candidates if

the Board almost certainly will not report the outcome of that vote. Contrary to the District Court's assertion, therefore, Section 806.13, and the Board's conduct thereunder, significantly burdens the Libertarians' "constitutional right...to create and develop [a] new political part[y]." *Norman v. Reed*, 502 U.S. 279, 288 (1992).

The District Court correctly recognized that "citizens in a democracy express their political preferences through voting, which is of the most fundamental significance under our constitutional structure," and that "after an election occurs, the First Amendment provides some level of protection to the important expressions of political preference that voters communicated by casting their ballots." Slip Op. at 8-9 (citation omitted). But the District Court's decision robs the Libertarians' votes of any communivcative or associative value. *See generally Anderson*, 460 U.S. at 789. The Libertarians' voter-supporters did not express their political preference by voting for a nondescript group comprising all write-in candidates for president. Rather, they cast valid write-in votes specifically for Barr, and the Libertarians and their voter-supporters have a right to know how many votes Barr received, so that they can build upon and improve that total in subsequent elections. *See Norman*, 502 U.S. at 288; *McLain v. Meier*, 851 F.2d 1045, 1051 (8th Cir. 1988) ("the State has an obligation to count all votes properly cast," including write-in votes).

7

In their motions for summary affirmance, neither the Board nor the Mayor makes any attempt to demonstrate that the District Court's decision meets the exacting standard for summary disposition. *See Taxpayers Watchdog, Inc.*, 819 F.2d at 297-98. Instead, both the Board and the Mayor simply repeat the District Court's rationale, and assert that it is "plainly correct." Board's Mot. for Sum. Aff. at 1; Mayor's Mot. for Sum. Aff. at 8. But that is not even an argument, much less one that justifies expedited action upon this appeal. Consequently, the Board and the Mayor have failed to carry their "heavy burden," and their motions should be denied. *Taxpayers Watchdog, Inc.*, 819 F.2d at 297.

## Conclusion

For the foregoing reasons, the motions for summary affirmance filed by the Board and by the Mayor should be denied, and the appeal should proceed.

Respectfully submitted,

/s/ Oliver B. Hall

| | |
|---|---|
| Gary Sinawski | Oliver B. Hall |
| 180 Montague Street | D.C. Bar. No. 976463 |
| 25th Floor | CENTER FOR COMPETITIVE DEMOCRACY |
| Brooklyn, NY 11201 | P.O. Box 21090 |
| (516) 971-7783 ph. | Washington, D.C. 20009 |
| (347) 721-3166 fx. | (202) 248-9294 ph. |
| gsinawski@aol.com | (202) 248-9345 fx. |
| | oliverhall@competitivedemocracy.org |

*Counsel for Plaintiff-Appellants*

8

**CERTIFICATE OF SERVICE**

I certify that on May 26, 2011 I caused the foregoing to be served, by means of the Court's CM-ECF system, on the following:

    Kenneth J. McGhie, Esq.
    Renee K. Christensen, Esq.
    District of Columbia Board of Elections and Ethics
    Office of the General Counsel
    441 Fourth Street, NW, Suite 270N
    Washington, DC 20001

    Todd Kim
    Solicitor General

    Donna Murasky, Esq.
    Deputy Solicitor General

    James C. McKay, Jr., Esq.
    Senior Assistant Attorney General
    Office of the Attorney General for the District of Columbia
    Office of the Solicitor General
    441 4th Street, NW, 6th Floor
    Washington, DC 20001

                                             /s/ Oliver B. Hall