# NO. 11-7029

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

## LIBERTARIAN PARTY, BOB BARR,
## J. BRADLEY JANSEN, ROB KAMPIA and STACIE RUMENAP

**Plaintiffs-Appellants,**

**v.**

## DISTRICT OF COLUMBIA BOARD OF ELECTIONS
## AND ETHICS, VINCENT C. GRAY and IRVIN B. NATHAN

**Defendants-Appellees.**

_____

**On Appeal from the United States District Court
For the District of Columbia**

_____

## BRIEF OF PLAINTIFFS-APPELLANTS

**Oliver B. Hall**                          **Gary Sinawski**
**1835 16th Street, NW, Suite 5**           **180 Montague Street, 25th Floor**
**Washington, DC 20009**                    **Brooklyn, NY 11201**
**(202) 248-9294**                          **(516) 971-7783**

**Counsel for Plaintiffs-Appellants**

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

The following information is provided by plaintiffs-appellants pursuant to D.C. Circuit Rules 28(a)(1) and 26.1(b):

### A.    Parties and Amici

The parties who have appeared before the district court and in this Court are plaintiffs-appellants Libertarian Party, Bob Barr, J. Bradley Jansen, Rob Kampia and Stacie Rumenap and defendants-appellees District of Columbia Board of Elections and Ethics, Vincent C. Gray, Mayor of the District of Columbia and Irvin B. Nathan, Acting Attorney General for the District of Columbia, in their official capacities.  There are no intervenors or amici curiae.

The Libertarian Party is a nationwide affiliation of voters formed in or about 1971 for the purpose of influencing public policy by a variety of means, which include running candidates for public office and disseminating its views on policy issues through its candidates' campaigns.

### B.    Rulings Under Review

The ruling at issue in this Court is the Order of the United States District Court for the District of Columbia (Hon. Beryl A. Howell, U.S.D.J.) entered on March 8, 2011 granting summary judgment to the defendants-appellees and denying summary judgment to the plaintiffs-appellants for the reasons set forth in an accompanying memorandum opinion, which is reported at 768 F. Supp.2d 174

i

(D.D.C. 2011).

**C.    Related Cases**

This case was not previously before this Court or any other court.  Counsel for plaintiffs-appellants are not aware of any other related cases currently pending in this Court or in any other court.

# TABLE OF CONTENTS

**Page**

Certificate of Parties, Rulings Under Review, and Related Cases                i

Table of Contents                iii

Table of Authorities                iv

Jurisdictional Statement                1

Statement of Issues                3

Statutes and Regulations                3

Statement of the Facts                4

Summary of Argument                7

Argument                8

Conclusion                28

Certificate of Compliance                29

Certificate of Service                30

# TABLE OF AUTHORITIES

**Page**

*American Party of Texas v. White*, 415 U.S. 767 (1974)    11

*\*Anderson v. Celebrezze*, 460 U.S. 780 (1983)    7, 11, 15, 16, 17, 19

*Barr v. Galvin*, 584 F. Supp.2d 316 (D. Mass. 1980)    12

*Bullock v. Carter*, 405 U.S. 134 (1972)    19

*\*Burdick v. Takushi*, 504 U.S. 428 (1992)    7, 11, 15, 16, 17, 22, 24

*Duke v. Clelland*, 5 F.3d 1399 (11th Cir. 1993)    12

*\*Dunn v. Blumstein*, 405 U.S. 330 (1972)    10, 15, 22, 23, 24, 28

*Gray v. Sanders*, 372 U.S. 368 (1963)    18, 22, 24

*Illinois State Board of Elections v. Socialist Workers Party*,
440 U.S. 173 (1979)    11, 18

*Jenness v. Fortson*, 403 U.S. 431 (1971)    11

*\*Kamins v. Board of Elections for the District of Columbia*,
324 A.2d 187 (D.C. 1974)    26, 27, 28

*Kramer v. Union Free School District*, 395 U.S. 621 (1969)    21

*Kusper v. Pontikes,* 414 U.S. 51 (1974)    10

*\*Libertarian Party v. D.C. Board of Elections and Ethics*,
768 F. Supp.2d 174 (D.D.C. 2011)    7, 9, 11

*Libertarian Party of Maine v. Diamond*, 992 F.2d 365 (1st Cir. 1993)    13

_____
*Authorities upon which appellants chiefly rely are marked with asterisks.

iv

*Nat'l Ass'n of Manufacturers v. Taylor*, 582 F.3d 1 (D.C. Cir. 2009)     23

*Norman v. Reed*, 502 U.S. 279 (1992)     16

*Schrader v. Blackwell,* 241 F.3d 783 (6th Cir. 2001)     3

*Storer v. Brown*, 415 U.S. 724 (1974)     10

*Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986)     23, 28

*\*Turner v. D.C. Bd. of Elections and Ethics*,
77 F. Supp.2d 25 (D.D.C. 1999)     16, 18, 19, 21

*United States v. Classic,* 313 U.S. 299 (1941)     18

*United States v. Mosley*, 238 U.S. 383 (1915)     18, 28

*Williams v. Rhodes*, 393 U.S. 23 (1968)     11, 19

U.S. Const. Am. I     3

U.S. Const. Am. V     3

28 U.S.C. § 1291     2

28 U.S.C. § 1331     2

28 U.S.C. § 1343(a)     2

42 U.S.C. § 1983     3, 8

D.C. Code § 1-1008.08(r)     1, 3, 4, 8

D.C. Mun. Regs., tit. 3, § 806(12)     4

D.C. Mun. Regs., tit. 3, § 806(13) 2, 4, 8, 9, 14, 15, 17, 19, 21, 22, 23, 24, 25, 27

## JURISDICTIONAL STATEMENT

The plaintiffs-appellants ("plaintiffs") are a minor political party (the Libertarian Party), its candidate for President of the United States in 2008 (Bob Barr) and its candidates for presidential elector from the District of Columbia who were pledged to Barr (J. Bradley Jansen, Rob Kampia and Stacie Rumenap). Plaintiffs Jansen, Kampia and Rumenap also sued in their capacity as District of Columbia voters who supported the Libertarian Party and Barr in the general election on November 4, 2008.  Defendant District of Columbia Board of Elections and Ethics (the "Board") is responsible for the administration of elections in the District of Columbia.  Defendants Vincent C. Gray, Mayor of the District of Columbia, and Irvin B. Nathan, Attorney General for the District of Columbia, are responsible for accepting service of process on behalf of the Board and were sued in their official capacities only.

Plaintiffs sought declaratory and injunctive relief from the Board's refusal to tally and report separately the number of votes cast for each qualified write-in candidate in the 2008 general election, including Barr, and from the application of D.C. Mun. Regs., tit. 3, § 806, which requires that write-in votes be separately tallied for each such candidate "only in contests where there is no candidate printed on the ballot in order to determine a winner, or where the total number of write-in votes reported ... is sufficient to elect a write-in candidate."  D.C. Mun.

Regs., tit. 3, § 806.13 ("Section 806.13").[1]  Plaintiffs also sought such prospective declaratory and injunctive relief as may be necessary and proper to ensure that the Board separately tallies and reports the number of votes cast for each qualified write-in candidate in future elections.  Doc 6, Am. Comp., ¶¶ 4, 31.

The district court had jurisdiction pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the Constitution of the United States, and pursuant to 28 U.S.C. § 1343(a), in that plaintiffs sought to redress the deprivation by the Board, acting under color of local law, of rights secured to plaintiffs by the First and Fifth Amendments to the Constitution of the United States.

The appeal is from a final Order, entered in the district court on March 8, 2011, granting defendants' motion to dismiss, denying plaintiffs' motion for summary judgment and disposing of all parties' claims for the reasons set forth in the accompanying Memorandum Opinion.  Doc[2] 23, Mem. Op.; Doc 24, Order. Plaintiffs timely filed a notice of appeal to this Court on April 4, 2011.  Doc 25. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  The district court's denial of plaintiffs' motion for summary judgment is subject to *de*

---

[1] The district court noted that "[t]his section of the D.C. Municipal Regulations was amended on November 26, 2010.  Previously, the pertinent sections appeared as §§ 808.15 and 808.16.  The recent amendments made no material changes to the regulations at issue ...."  Doc 23, Mem. Op., p. 2 n.2. Here, plaintiffs use the current section numbering and text.

[2] Document ("Doc") numbers correspond to those on the district court docket sheet.

2

*novo* review.  *See, e.g., Schrader v. Blackwell,* 241 F.3d 783, 787 (6th Cir. 2001).

## STATEMENT OF ISSUES

Whether the refusal by the Board of Elections and Ethics to separately tally and report the write-in votes cast for each qualified write-in candidate in the 2008 general election, including plaintiff-appellant Bob Barr, the Libertarian Party candidate for president, violated plaintiffs-appellants' rights under 42 U.S.C. § 1983 and the First and Fifth Amendments to the Constitution of the United States.

Whether Section 806.13, as applied by the Board in justification of its refusal to separately  tally and report such votes, violates plaintiffs-appellants' rights under 42 U.S. C. § 1983 and the First and Fifth Amendments to the Constitution of the United States.

## STATUTES AND REGULATIONS

D.C. Code § 1-1001.08(r) provides in relevant part:

(1) In any primary, general, or special election held in the District of Columbia to nominate or elect candidates to public office, a voter may cast a write-in vote for a candidate other than those who have qualified to appear on the ballot.

* * *

(3) To be eligible for election to public office, a write-in candidate shall be a duly registered elector and shall meet all of the other qualifications required for election to the office and shall declare his or her candidacy not later than 4:45 p.m. on the seventh day immediately following the date of the election in which he or she was a candidate on a form or forms prescribed by the Board [of Elections and Ethics].

D.C. Mun. Regs., tit. 3, § 806 provides in relevant part:

806.12 The total number of write-in votes marked by voters shall be reported for each contest.

806.13 The total number of votes cast for each write-in nominee shall be calculated only in contests where there is no candidate printed on the ballot in order to determine a winner, or where the total number of write-in votes reported, under § 808.12, is sufficient to elect a write-in candidate.

## STATEMENT OF THE FACTS

Plaintiff Barr was nominated as the Libertarian Party candidate for president at the party's national nominating convention held in Denver, Colorado during the period May 22-26, 2008.  Doc 6, Am. Comp., ¶ 14; Doc 9-1, Declaration of Richard Winger executed on December 12, 2009 ("Winger Decl."), ¶ 9. Thereafter, plaintiffs Jansen, Kampia and Rumenap were duly selected as the Libertarian Party candidates for presidential elector from the District of Columbia pledged to Barr.  Doc. 6, Am. Comp., ¶ 15.  Plaintiffs Barr, Jansen, Kampia and Rumenap timely qualified as write-in candidates in the District of Columbia and met all of the qualifications prescribed by law for write-in candidates.  Doc 6, Am. Comp., ¶¶ 2, 17.

The District of Columbia permits write-in voting, D.C. Code § 1-1001.08(r), but does not require that the votes cast for each qualified write-in candidate in an electoral contest be separately tallied and reported, D.C. Mun. Regs., tit. 3, § 806. Write-in votes were cast for Barr in the November 2008 election, but the Board refused to tally them and to report the number of write-in votes he received.  Doc 6,

Am. Comp., ¶ 3.  Instead, the Board tallied and reported, as a single total, the sum of all write-in votes cast for candidates for president.  *Id.*

Barr was listed on the November 2008 presidential ballots of 45 states and ran as a qualified write-in candidate in one additional state and the District of Columbia.  Doc 6, Am. Comp., ¶ 19; Doc 9-1, Winger Decl., ¶ 10.  All of these jurisdictions, except for the District of Columbia, tallied and reported the number of votes cast for Barr.  *Id.*, ¶ 11.

On or about November 10, 2008 and again on or about December 9, 2008 a representative of the plaintiffs requested in writing that the Board tally and publicize the write-in votes cast for each qualified write-in candidate in the District of Columbia as part of its official vote total for the 2008 general election.  Doc 6, Am. Comp., ¶ 21; Doc 9-6, Declaration of Oliver B. Hall executed on December 14, 2009 ("Hall Decl."), ¶ 2.  On or about November 19, 2008 and again on or about December 12, 2008 the Board refused such requests.  Doc 6, Am. Comp., ¶ 22; Doc 9-6, Hall Decl., ¶ 2.

The results for the November 2008 general election published by the Board at http://www.dcboee.org show the number of votes cast for each presidential candidate who was listed on the ballot.  Those results also show that 1,138 write-in votes were cast for president but do not show the candidates who received write-in votes or the number of write-in votes each received.

On January 22, 2009, after plaintiffs' motion for summary judgment was fully briefed, the Federal Election Commission released the official results of the 2008 presidential election.  *See* FEC, 2008 Official Presidential General Election Results <http://www.fec.gov/pubrec/fe2008/2008presgeresults.pdf>.  Because the Board did not tally and report the write-in votes cast for Barr, the results published by the FEC incorrectly indicate that Barr did not receive any votes in the District of Columbia.  *See* FEC, 2008 Official Presidential General Election Results, *supra* (identifying state elections offices as source of official results).  This omission could potentially have impaired the Libertarian Party's ability to qualify for public funding in 2012 .  (Pursuant to 26 U.S.C. §§ 9003 and 9004, if a minor party presidential candidate polls at least five percent of the national vote, the party qualifies for public funding in the next general election.)

Plaintiff Libertarian Party intends to nominate candidates for public office who will run as qualified write-in candidates in future elections in the District of Columbia.  Doc 6, Am. Comp., ¶ 24.  Plaintiffs Jansen, Kampia and Rumenap intend to run as candidates for presidential elector pledged to the Libertarian Party's duly-selected presidential candidate in future elections in the District of Columbia.  *Id*.

## SUMMARY OF ARGUMENT

The district court acknowledged that this case presents "a close question," namely, "whether Plaintiffs' speech and associational rights extend to the manner in which votes are reported." *Libertarian Party v. D.C. Bd. Of Elections and Ethics*, 786 F. Supp.2d 174, 180 (D.D.C. 2011). The court correctly assumed that these rights do extend to the manner in which votes are reported. However, the court erred in finding that the burden Section 806.13 imposed on plaintiffs' rights was minimal and was outweighed by the justification advanced by the Board in support of Section 806.13, namely, the District's interest in saving time and money in connection with the reporting of election results.

The district court's decision contains several reversible errors and appears to be without precedent. Under the balancing test developed by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992), the failure to report election results separately for each write-in candidate, including plaintiff Barr, resulted in severe injury to plaintiffs' speech and associational rights; no interests of the District of Columbia sufficiently weighty to justify those injuries were advanced by the Board; and the Board's failure to report the election results at issue on a candidate-by-candidate basis, together with the election regulations on which that failure was grounded, were therefore unconstitutional.

7

## ARGUMENT

## I.    INTRODUCTION

Plaintiffs' challenged the constitutionality of the Board's refusal to tally and report the votes cast for Barr, who was the Libertarian Party's presidential nominee in the 2008 general election and a declared write-in candidate under District of Columbia law.  Doc 6, Am. Comp., ¶¶ 16-17; D.C. Code § 1-1001.08(r).  Pursuant to Section 806.13, the Board reported the total votes cast for all write-in presidential candidates in the 2008 election but did not separately report the individual total cast for each qualified write-in candidate, including the outcome of the valid votes cast by Jansen, Kampia and Rumenap.  Doc 6, Am. Comp., ¶¶ 19-23.  Plaintiffs claim that the Board's failure to report the total number of votes cast for Barr as a qualified write-in candidate, together with Section 806.13 as applied to them, violated their rights under 42 U.S.C. § 1983 and the First and Fifth Amendments to the constitution, Doc 6, Am. Comp., ¶¶ 25-27. They sought the following relief:

1.    a declaration that the Board's failure to tally and report the total number of votes cast for each qualified write-in candidate is unconstitutional;

2.    a declaration t hat Section 806.13 is unconstitutional as applied;

3.    an order directing the Board to tally and report the number of valid write-in votes cast for Barr in the 2008 general election;

4. a permanent injunction prohibiting the Board from failing to tally and report the total number of votes cast for each qualified write-in candidate for public office in the District of Columbia;

5. reasonable attorney fees pursuant to 42 U.S.C. § 1988; and

6. such other relief as may be just and proper.

Doc 6, Am. Comp., ¶ 31.

The district court granted summary judgment to defendants, concluding that the Board's asserted administrative interests in regulating elections provide a rational basis for Section 806.13 and for the Board's failure to report the total number of votes cast for Barr. *See Libertarian Party v. D.C. Bd. of Elections and Ethics*, *supra*, at 188. As explained below, plaintiffs urge that the district court's decision contains several errors that constitute grounds for reversal. Its conclusion, that the Board's refusal to tally and report the plaintiffs' valid write-in votes on an equal basis with all others is justified by the Board's administrative interest in saving time and money, is in direct conflict with decisions of the Supreme Court which expressly reject that conclusion. Further, the district court's decision appears to be without precedent in any state or federal court.

## II. THE *ANDERSON* BALANCING TEST DETERMINES THE STANDARD OF REVIEW FOR STATE LAWS THAT RESTRICT PARTICIPATION IN THE ELECTORAL PROCESS

The Supreme Court has cautioned that while the administration of the

9

election process is largely entrusted to the states, they may not infringe on basic constitutional protections.[3] *Kusper v. Pontikes*, 414 U.S. 51, 57 (1974) (citing *Dunn v. Blumstein*, 405 U.S. 330 (1972)). Thus, in the first case in which the Supreme Court addressed the constitutional status of state laws restricting candidates' access to the ballot, the Court noted that such restrictions

> place burdens on two different, although overlapping, kinds of rights -- the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms.

*Williams v. Rhodes*, 393 U.S. 23, 30 (1968) (holding that Ohio's election laws making it virtually impossible for a minor party to access the presidential election ballot were unconstitutional).

Many electoral restrictions are, of course, justified by the state's (here, the District's) legitimate regulatory interests. "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown,* 415 U.S. 724, 730 (1974). In evaluating a constitutional challenge to a state-imposed restriction on access to the ballot, the Supreme Court has described the trial court's task as follows:

---

[3]The federal courts' jurisprudence concerning electoral restrictions imposed by the states applies perforce to those imposed by the District of Columbia.

It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged [restriction] is unconstitutional

*Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) (holding that Ohio's March filing deadline for independent presidential candidate petitions was unconstitutionally burdensome).[4]

In *Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992) (upholding Hawaii's prohibition against write-in voting in the context of a regulatory framework providing for easy access to the ballot) the Supreme Court endorsed the *Anderson* methodology and examined the circumstances in which different levels of scrutiny

---

[4]The *Anderson* Court based its analysis on the First and Fourteenth Amendments generally and did not explicitly engage in a separate equal protection analysis. The Court stated, however, that it "rel[ied] ... on the analysis in a number of our prior election cases resting on the Equal Protection Clause of the Fourteenth Amendment," *id*. at 786 n. 7, and indicated that those cases had been correctly decided. The earlier cases to which the Court referred employed traditional equal protection analysis but with varying levels of scrutiny. *See Williams v. Rhodes, supra*; *Jenness v. Fortson*, 403 U.S. 431 (1971); *Storer v. Brown, supra*; *American Party of Texas v. White*, 415 U.S. 767 (1974), *rehearing denied*, 417 U.S. 926; *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979). The district court noted that the Fourteenth Amendment does not apply to the District of Columbia and that its protections are applied to the District through the Fifth Amendment. *Libertarian Party v. D.C. Board of Elections and Ethics,* 768 F. Supp.2d 174, 177n.4 (D.D.C. 2011).

should be applied, stating:

> Election laws will invariably impose some burden upon individual voters. Each provision of a code, whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects -- at least to some degree -- the individual's right to vote and his right to associate with others for political ends [citing *Anderson* at 788]. Consequently, to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest ... would tie the hands of States seeking to assure that elections are operated equitably and efficiently.
> * * *
> * * *
> Under [*Anderson's* "more flexible standard"], the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. ___, ___, 112 S.Ct. 698, 705, 116 L.Ed.2d 711 (1992). But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions [citing *Anderson* at 788] ....

The *Anderson* approach, as informed by *Burdick*, has been characterized as "a balancing test that ranges from strict scrutiny to a rational-basis analysis, depending upon the factual circumstances in each case." *Duke v. Clelland,* 5 F.3d 1399, 1405 (11th Cir. 1993), (citing *Fulani v. Krivanek*, 973 F.2d 1539, 1543 (11th Cir. 1992)). *Barr v. Galvin*, 584 F. Supp.2d 316, 320 (D. Mass. 1980) summarized these considerations as follows:

> Actions of the state with implications on ballot access are subject to a sliding scale, with more searching review applied to more burdensome regulations. *McClure v. Galvin*, 386 F.3d 36, 41 (1st Cir. 2004). Voting regulations

imposing "severe burdens" must be narrowly tailored to a compelling state interest, but "reasonable, nondiscriminatory restrictions" will usually be justified by "important regulatory interests." *Id*., citing *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358, 117 S. Ct. 1364, 137 L. Ed.2d 589 (1997).

Thus, the *Anderson-Burdick* balancing test is a judicial attempt to achieve an "equilibrium between the legitimate constitutional interests of the States in conducting fair and orderly elections and the First Amendment rights of voters and candidates." *Libertarian Party of Maine v. Diamond*, 992 F.2d 365, 370 (1st Cir. 1993). In developing this test, however, the Supreme Court explicitly recognized that "the State has a less important interest in regulating Presidential elections than statewide or local elections, because the outcome of the former will be largely determined by voters beyond the State's boundaries." *Anderson*, 460 U.S. at 794-95.

In the following discussion, plaintiffs employ the *Anderson-Burdick* form of analysis by evaluating the injuries to plaintiffs' constitutional rights caused by the Board's refusal to tally and report the number of write-in votes cast for Barr and by the District of Columbia's statutory prohibition against such counting and reporting; the interests of the District of Columbia which are asserted to justify those injuries; and in light of these considerations, the constitutionality of the Board's refusal and of the statutes in which its refusal was grounded.

13

## III.   THE BOARD'S FAILURE TO COUNT WRITE-IN VOTES CANNOT WITHSTAND CONSTITUTIONAL SCRUTINY UNDER *ANDERSON*

The Board's contention that Section 806.13 does not violate plaintiffs' constitutional rights fails on several grounds, beginning with the Board's assertion that the statute is not "subject to *any* review by the Court."  Doc 7, Bd. Mot. to Dismiss, p. 13 n.8   Proceeding from this faulty premise, the Board asserted that Section 806.13 would nevertheless survive such review because the statute does not infringe plaintiff Libertarian Party's "core functions" or impose a "severe burden on Plaintiffs."  *Id.*, pp. 7-8, 16.  Finally, the Board asserted that Section 806.13 promotes certain administrative benefits, which justify the burden that the statute imposes.  *Id.*, pp. 19-21.

The Board is wrong on all counts.  First, whether the Board is willing to "concede" the point or not, *Id.*, p. 13 n.8, the power of the district court to review an election law that restricts plaintiffs' constitutional rights is beyond dispute. Second, because Section 806.13 imposes severe and unequal burdens, the statute is subject to a heightened level of review comparable to strict scrutiny.  Third, the administrative benefits that Section 806.13 purportedly promotes are plainly insufficient to justify the severe and unequal burdens that the statute imposes. Therefore, Section 806.13 cannot withstand constitutional scrutiny.

### A.    The Court's Power to Review Section 806.13 is Beyond Dispute

The Board's erroneous claim that Section 806.13 is not subject to the district

14

court's review arises, at least in part, from a misreading of precedent. The

Supreme Court has historically applied strict scrutiny to statutes that curtail the

right to vote, because the right to vote is "a fundamental political right ...

preservative of all rights." *Dunn v. Blumstein,* 405 U.S. 330, 336 (1972) (quoting

*Reynolds v. Sims*, 377 U.S. 533, 562 (1964)). The Board asserted, however, that

"strict scrutiny analysis ... has since been overruled" in the context of statutes

regulating write-in votes. Doc 7, Bd. Mot. to Dismiss, p. 18 n.10 (citing *Burdick*,

504 U.S. 428). This claim is patently false, but even if it were true, Section 806.13

would still be subject to judicial review.

In *Burdick* the Supreme Court did not "overrule" strict scrutiny of statutes

regulating write-in voting. Rather, the Court simply noted that laws that impose a

burden on the right to vote are not *necessarily* "subject to strict scrutiny." *Burdick*,

504 U.S. at 433. The Court applied the *Anderson* balancing test to determine the

appropriate standard of review. *See id.* at 434 (citing *Anderson*, 460 U.S. at 788-

89). Although the Court determined that a lesser standard of review was

appropriate because the statute under review did not impose a severe burden, the

Court explicitly reaffirmed that statutes which impose such burdens must be

"narrowly drawn to advance a state interest of compelling importance." *Burdick*,

504 U.S. at 434 (quoting *Norman v. Reed*, 502 U.S. at 289). In other words,

under the *Anderson* test, as construed in *Burdick*, state election laws that impose

severe burdens – including some laws regulating write-in votes – are subject to a

heightened standard of review comparable to strict scrutiny.  *See id.*

    The Board also appeared to view *Burdick*'s holding itself as cause to doubt

whether Section 806.13 is "subject to judicial review."  Doc 7, Bd. Mot. to

Dismiss, pp. 12, 18 n.10.  In *Burdick*, the Supreme Court upheld Hawaii's flat ban

on write-in voting on the ground that Hawaii's permissive ballot access scheme

otherwise provided adequate protection of voters' rights.  *See Burdick*, 504 U.S.

428, 441-42.[5]  As the district court has recognized, however, the power to ban

write-in voting does not entail the power to withhold the release and certification

of votes validly cast in a manner that District of Columbia law specifically

authorizes.  *See Turner v. District of Columbia Bd. of Elections and Ethics*, 77 F.

Supp.2d 25, 31 n.3 (D.D.C. 1999) (distinguishing *Burdick* in case requiring the

release and certification of referendum election results).  Instead, having granted

citizens the right to cast write-in votes, the District of Columbia is "obligated to

confer the right in a manner consistent with the Constitution."  *Id*. (citation

omitted).  The district court concluded that legislation which "preclude[s] release

_____

    [5]In contrast to Hawaii's permissive ballot access framework, the District of
Columbia's framework is the fourth most difficult in the nation, surpassed only by
Wyoming, North Carolina and Oklahoma – all the more reason for minor party
presidential candidates such as Barr to run as write-in candidates in the District
rather than to seek access to the ballot.  Doc 9-1, Winger Decl., ¶ 7 and
Attachment B.

and certification of the results" of an election "would have to pass constitutional muster." *Id.* at 32.

Accordingly, neither the *Anderson* test as applied in *Burdick*, nor the holding of *Burdick* itself, imposes any limitation upon this Court's power to review the unequal burdens that Section 808.16 imposes on plaintiffs' constitutional rights.

**B.    Section 806.13 is Subject to a Heightened Standard of Review Comparable to Strict Scrutiny because the Statute Imposes Severe Burdens on Plaintiffs' Constitutional Rights**

The Board contended that "no fundamental right – associational, voting, or otherwise – is at stake so as to trigger strict scrutiny under the Equal Protection Clause," and thus urged the court to apply rational basis review to Section 806.13. Doc 7, Bd. Mot. to Dismiss, p. 13. Conspicuously, however, the Board failed to acknowledge the most obvious burden that Section 806.13 imposes. Specifically, by authorizing the Board not to certify and report write-in votes, Section 808.16 effectively disenfranchises plaintiffs Jansen, Kampia and Rumenap, each of whom is a registered District of Columbia voter who cast a valid write-in vote for plaintiff Barr in the 2008 presidential election. Doc 6, Am. Comp., ¶ 1. The Board's omission is significant, for "the right to vote has been most powerfully raised in Equal Protection claims where burdened parties sought relief from the inability to cast their votes 'effectively.'" *Turner*, 77 F. Supp.2d at 30 (quoting *Illinois State*

*Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979). That is

plaintiffs' claim herein.

Little discussion is needed to establish the paramount importance of the right

to vote in our representative form of government. As the court stated in *Turner*:

> The vote has long been considered the crux of the democratic system. *See*
> *Williams v. Rhodes*, 393 U.S. 23, 31 (1968) (describing the right to vote as
> among the "more precious in a free country" (quoting *Wesberry v. Sanders*,
> 376 U.S. 1, 17 (1964))). The right to speak to our governing bodies, through
> the vote, ensures our nation's ability to function as a democracy, with
> legislatures responsive to their voting constituents. *See id.* ("'Other rights,
> even the most basic, are illusory if the right to vote is undermined'"); *see*
> *also Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173,
> 184 (1979) (stating that "voting is of the most fundamental significance
> under our constitutional structure").

*Turner*, 77 F. Supp. 2d at 30. Further, it is beyond dispute that the right to vote

includes "the right of qualified voters within a state to cast their ballots *and have*

*them counted*." *Id*. at 33 (emphasis added) (quoting *United States v. Classic*, 313

U.S. 299, 315 (1941)). The Supreme Court recognized long ago that "'the right to

have one's vote counted' has the same dignity as 'the right to put a ballot in a

box.'" *Gray v. Sanders*, 372 U.S. 368, 380 (1963) (quoting *United States v.*

*Mosley*, 238 U.S. 383 (1915)). Therefore, not only is every voter's vote "entitled to

be counted once," but also, "it must be *correctly* counted *and reported*." *Gray*, 372

U.S. at 380 (emphasis added). Accordingly, the district court had previously

concluded that the proper level of review for legislation that restricts the right to

have valid votes counted and reported "would be strict scrutiny." *Turner*, 77 F.

Supp. 2d at 32.

The severe burden that Section 806.13 imposes upon plaintiff Barr and plaintiff Libertarian Party provides yet another basis for the Court to apply strict scrutiny, because "voters can assert their preferences only through candidates or parties or both." *Anderson*, 460 U.S. at 787. The burden that Section 806.13 imposes upon plaintiff Barr, as the declared write-in candidate of plaintiff Libertarian Party, thus extends to their voter-supporters, including plaintiffs Jansen, Kampia and Rumenap. *See Bullock v. Carter*, 405 U.S. 134, 143 (1972) ("the rights of voters and the rights of candidates do not lend themselves to neat separation"). By authorizing the Board not to certify and report valid votes that plaintiffs Jansen, Kampia and Rumenap cast for plaintiff Barr, Section 806.13 therefore burdens not only "the right of qualified voters, regardless of their political persuasion, to cast their votes effectively," but also the related "right of individuals to associate for the advancement of political beliefs." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968) (applying strict scrutiny in Equal Protection challenge to ballot access law).

The Board erroneously asserted that it has not infringed the Libertarian Party's "core functions." Doc 7, Bd. Mot. to Dismiss, pp. 7-8.  On the contrary, a voter who casts a valid write-in ballot for a declared candidate like Barr is entitled to know whether she has acted in concert with other like-minded voters or whether

her vote is a lone statement in the political wilderness.  The voting public is entitled to know how Barr fared at the polls.  The Libertarian Party is entitled to know whether its stature has grown or been diminished by the votes cast for Barr. None of this vital information, laden with associative and communicative value, is available if the Board fails to count and report the Barr vote.[6]  To state the obvious, "[t]he reputation of minor parties in the United States is strongly affected by how many votes they poll for President of the United States.  News media articles about various minor parties typically mention the presidential vote totals, to give readers a sense of how significant or insignificant a party is." Doc 9-1, Winger Decl., ¶ 3. The district court recognized these realities in observing that

> [w]hen a citizen steps into the voting booth to cast a vote, he or she intends to send a message in support of or in opposition to the candidate or measure at issue ...  The message of the vote is received when the election results are released thereby completing an important communication by the public to the government ... To cast a lawful vote only to be told that that vote will not be counted or released is to rob the vote of any communicative meaning whatsoever.

*Turner*, 77 F. Supp.2d at 30.

The Board nevertheless insisted that strict scrutiny is not warranted because write-in candidates and political parties "are not suspect classes." Doc 7, Bd. Mot. to

---

[6]Indeed, reported write-in votes accounted for more than ten percent of the total votes credited to Eugene McCarthy in 1976 and to Ralph Nader in 2004.  Doc 9-1, Winger Decl., ¶ 4.  As a write-in candidate in the District of Columbia, however, McCarthy was not credited with any votes, because the Board did not tabulate write-in ballots. *Id.* ¶ 6.

Dismiss, p.12 & n.7. Again, however, the Board failed to address the burden that Section 806.13 imposes upon the rights of plaintiffs Jansen, Kampia and Rumenap, as registered voters in the District of Columbia whom the statute effectively disenfranchised. Moreover, the Board simply misapprehended the Supreme Court's Equal Protection jurisprudence. The presence of a suspect class is a <u>sufficient</u> condition for application of strict scrutiny to legislation, regardless of its subject matter, *see Kramer v. Union Free School District*, 395 U.S. 621, 628 n.8 (1969), but it is not a <u>necessary</u> condition, because strict scrutiny also applies to state election laws – including Section 806.13 – that impose severe burdens on First Amendment rights. *See Turner*, 77 F. Supp. 2d at 33 (citing *Burdick*, 504 U.S at 434). As the foregoing discussion establishes, the burden that Section 806.13 imposes could not be more severe, because the statute deprived plaintiffs Jansen, Kampia and Rumenap of their right to have their valid votes for plaintiff Barr counted and reported, and because in so doing, the statute interfered with the associational rights of all plaintiffs.

Accordingly, strict scrutiny applies to Section 806.13, because the statute imposes severe burdens upon plaintiffs' voting and associational rights.

### C.    The Administrative Benefits Asserted By the Board Cannot Justify the Severe Burdens that Section 806.13 Imposes

The state regulatory interests asserted in *Burdick* and relied upon by the Board cannot justify the severe burdens that Section 806.13 imposes. *See Burdick*,

504 U.S. at 434. Unlike the plaintiff in *Burdick*, who asserted a constitutional right to have counted a "protest vote" for Donald Duck, *id.* at 438, plaintiffs herein assert the right to have counted valid votes for a declared write-in candidate, which were cast in a manner specifically authorized by District of Columbia law.  Doc 6, Am. Comp., ¶ 16. Consequently, the Board must establish that Section 806.13 is "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434 (citation omitted). The Board did not even attempt to meet this burden.

It is a matter of settled law that "States may not casually deprive a class of individuals of the vote because of some remote administrative benefit to the State." *Dunn v. Blumstein*, 405 U.S. 330, 351 (1972) (quoting *Carrington v. Rash*, 380 U.S. 89, 96 (1965)). Instead, the Equal Protection Clause requires that "all who participate in [an] election are to have an equal vote." *Gray v. Sanders*, 372 U.S. 368, 379 (1963). Therefore, before the voting rights of a class of voters can be restricted, "the purpose of the restriction and the assertedly overriding interests served by it must meet close constitutional scrutiny." *Dunn*, 405 U.S. at 336 (citation omitted).

Having failed to acknowledge the burdens that Section 806.13 imposes, the Board likewise disregarded the foregoing precedent, and attempted to justify the statute by asserting that it confers certain administrative benefits. Specifically, the

Board asserted that Section 806.13 promotes "the efficient and expedient reporting of election results, reduction of election administration costs, and the promotion of faith in the certainty of election results." Doc 7, Bd. Mot. to Dismiss, p. 19. By their own terms, these interests constitute precisely the sort of "administrative benefit" that the Supreme Court has found insufficient to justify the deprivation of a citizen's "constitutionally protected right to participate in elections on an equal basis with other citizens." *Dunn*, 405 U.S. at 336, 351 (citations omitted); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 218 (1986) ("the cost of administering the election system is not a sufficient basis here for infringing appellees' First Amendment rights"). As a matter of law, therefore, the Board fails to assert interests sufficient to justify its failure to certify and report Plaintiffs' valid write-in votes.

Even if the Court were to apply not "strict," but rather "some lesser-but-still-heightened form of scrutiny," the administrative benefits that the Board asserted would still have fallen short, because "significant encroachments cannot be justified by a mere showing of some legitimate governmental interest." *Nat'l Ass'n of Manufacturers v. Taylor*, 582 F.3d 1, 10 (D.C. Cir. 2009) (reviewing First Amendment challenge to lobbying disclosure statute) (citation omitted). Thus, the Board cannot possibly justify Section 806.13, which effectively disenfranchises the entire class of District of Columbia voters who cast valid write-in votes, simply by

asserting that it renders elections easier and less expensive to administer. *See id.*; *Dunn*, 405 U.S. at 336. Notably, the Board failed to cite a single authority suggesting that the interest in achieving these administrative benefits justifies such a severe burden. Doc 7, Bd. Mot. to Dismiss, pp. 19-21.

The administrative benefits asserted by the Board also fail to justify Section 806.13 because the statute is not "narrowly drawn" to achieve them. *Burdick*, 504 U.S. at 434 (citation omitted). Excluding valid write-in votes from the certified totals reported for each candidate might render elections easier and less expensive to administer, but such exclusion plainly violates the write-in voter's right to have their vote "correctly counted and reported," *Gray*, 372 U.S. at 380, as well as their right "to participate in elections on an equal basis with other citizens." *Dunn*, 405 U.S. at 336 (citation omitted). The Constitution does not permit such arbitrary exclusion of valid write-in votes any more than it permits the exclusion of any other class of voters from equal participation in elections. *See id.* at 336, 352.

Finally, it is far from clear that Section 806.13 provides the administrative benefits that the Board asserted. As to the first and second asserted benefits, "the efficient and expedient reporting of election results," and the "reduction of election administration costs," the Board claimed that "significant delay" would result and "substantial man-hours" would be required for the Board "to tabulate all write-in results…by hand." Doc 7, Bd. Mot. to Dismiss, p. 19. Such claims are

unconvincing, however, because Section 806.13 already requires the Board to count write-in votes. Therefore, it cannot be maintained that requiring the Board to certify and report the <u>result</u> of such votes, which the Board is already required by law to count, would impose a significant burden or expense.

The third asserted benefit, "the promotion of faith in the certainty of election results," fares no better. Doc 7, Bd. Mot. to Dismiss, p. 19. The Board's assertion that Section 806.13 promotes "public confidence," for instance, is dubious on its face. *Id.* p. 20. Public confidence in election outcomes is promoted by the accurate and complete reporting of voting results, *not* by regulations such as Section 806.13 which arbitrarily exclude an entire class of valid votes from the certified vote totals. Furthermore, to the extent that "public sentiment…was shaken" by the outcome of elections in cases cited by the Board, valid write-in votes certainly were not the cause. Doc 7, Bd. Mot. to Dismiss, p. 20 (citing *Sheehan v. Franken*, 767 N.W.2d 453 (D. Minn. 2009); *Bush v. Gore*, 531 U.S. 98 (2000)).

Accordingly, the administrative benefits that the Board asserts are insufficient to justify the severe burdens that section 806.13 imposes.

## IV.  THE BOARD'S FAILURE TO CERTIFY AND REPORT WRITE-IN VOTES FOR EACH DECLARED CANDIDATE IS INCONSISTENT WITH LOCAL LAW AS ENUNCIATED BY THE D.C. COURT OF APPEALS

The importance of write-in voting in the District of Columbia was addressed some 35 years ago in *Kamins v. Board of Elections for the District of Columbia*,

324 A.2d 187, 192-93 (D.C. 1974), which involved a write-in vote cast for Dr.

Benjamin Spock for president.  At the time, D.C. law made no provision for write-

in voting.  The Board took the position that it was therefore not permitted to

provide space or count votes for candidates who were not listed on the ballot.  The

D.C. Court of Appeals disagreed.  It said that write-in votes must be counted in a

presidential election where they are cast for candidates for whom a valid slate of

electors has been filed, as in the present case:

> ... we do not believe Congress intended otherwise valid votes to be
> disregarded merely for the reason that a time-honored method of political
> expression had not been mentioned in the statute nor provided for by
> regulation.  The fundamental nature of the right involved persuades us that
> construction of the statute in favor of the franchise is the course which we
> must follow since there is no compelling reason to do otherwise.
>                                     * * *
> We conclude that the facilitation of vote counting provided by the Board's
> machines, when measured against the denial of franchise that results when a
> vote is not counted, does not further such a substantial and compelling
> Board interest as to permit the Board to refuse to count write-in (or
> "sticker") ballots [citations omitted].  The Board's comments are not
> sufficiently weighty to alter our view.  The administrative difficulty
> expressed is apparently one which can be solved without impeding the
> election machinery.  [Footnote omitted.]

Upon remand for the purpose of fashioning relief, the trial court entered the

following order:

> Ordered, that the deft, the Board of Elections of the District of Columbia,
> provide a line on the ballot for President and Vice President of the United
> States marked write-in candidates. 2. That the deft, the Board of Elections
> of the District of Columbia, count the names of write-in candidates for
> President and Vice President of the United States when place (sic) on ballots
> in elections for President and Vice President; provided however, the said

write-in candidate has a qualified slate of electors whose names and affidavits have been filed with the deft. Board at the appropriate time, prior to the election.  3. That the deft., Board of Elections promulgate a regulation to provide for one and two above.  4. That pltf. be awarded his court costs.

Doc 9-1, Winger Decl., ¶ 12 and Attachment C.

Nothing in *Kamins* supports the position taken by the Board and by D.C.

law that the total votes cast for a write-in candidate may be counted only "where

there is no candidate printed on the ballot in order to determine a winner, or where

the total number of write-ins reported ... is sufficient to elect a write-in candidate,"

as now provided in Section 806.13.  While the Board may be in literal compliance

with *Kamins*, its refusal to tally and report the write-in votes cast for Barr  robs the

decision of meaning.  The D.C. Court of Appeals could not reasonably have

anticipated that, in the aftermath of *Kamins*, write-in votes would be permitted but

not counted or reported.  As the court pointed out, quoting from *Carrington v.

Rash*, 380 U.S. 89, 96 (1965):

> "We deal here with matters close to the core of our constitutional system.
> 'The right ... to choose,' [citation omitted] that [the] Court has been so
> zealous to protect, means, at least, that States may not casually deprive a
> class of individuals of the vote because of some remote administrative
> benefit to the State [citation omitted]."

*Kamins* at 193 n.10.  *See also Tashjian v. Republican Party of Connecticut*, 479

U.S. 208, 218 (1986) ("the cost of administering the election system is not a

sufficient basis here for infringing appellees' First Amendment rights"); *Dunn v.

Blumstein*, 405 U.S. 330, 351 (1972) ("The right to vote cannot be abridged to

27

save the state money or inconvenience"); *Gray v. Sanders*, 372 U.S. 368, 380

(1963) ("Every voter's vote is entitled to be counted once. It must be correctly

counted and reported"); *U.S. v. Moseley*, 238 U.S. 383, 386 (1915) ("the right to

have one's vote counted' has the same dignity as 'the right to put a ballot in a

box").

## **CONCLUSION**

For the foregoing reasons the Court should reverse the determination of the

district court, deny defendants' motion to dismiss and grant plaintiffs' motion for

summary judgment.

Respectfully submitted,

/s/Oliver B. Hall
CENTER FOR COMPETITIVE
DEMOCRACY
1835 16th Street, NW, Suite 5
Washington, DC 20009
(202) 248-9294 ph.
(202) 248-9345 fx.
oliverhall@competitivedemocracy.org

Gary Sinawski
180 Montague Street, 25th Floor
Brooklyn, NY 11201
(516) 971-7783 ph.
(347) 721-3166 fx.
gsinawski@aol.com

*Counsel for Plaintiffs-Appellants*

**Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains less than 14,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using WordPerfect X3 in 14 point Times New Roman type style.

/s/Oliver B. Hall

Attorney for Plaintiffs-Appellants

Dated: November 14, 2011

29

## CERTIFICATE OF SERVICE

I certify that on November 14, 2011 I caused the foregoing Brief of Plaintiffs-Appellants to be served by means of the Court's CM-ECF system and by prepaid United States first class mail upon the following:

Kenneth J. McGhie
Rudolph M.D. McGann, Jr.
District of Columbia Board of Elections and Ethics
Office of the General Counsel
441 4th Street, NW, Suite 270N
Washington, DC 20001
kmcghie@dcboee.org
rmcgann@dcboee.org

Donna Murasky
James C. McKay, Jr.
Office of the Attorney General for the District of Columbia
Office of the Solicitor General
441 4th Street, NW, 6th Floor
Washington, DC 20001
donna.murasky@dc.gov
james.mckay@dc.gov

/s/Oliver B. Hall